# DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 14-00064 |
| Plaintiff-Respondent, | CIVIL CASE NO. 18-00012 |
| vs. | |
| FRANKLIN JOHN SALAS, | **REPORT & RECOMMENDATION** |
| Defendant-Petitioner. | re Section 2255 Motion to Vacate, Set Aside, or Correct Sentence |

This case is before the court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (the "Motion"), filed by Defendant-Petitioner Franklin John Salas (the "Defendant"). *See* Mot., ECF No. 62.[1] The Defendant is presently serving a sentence of 108 months imprisonment based on his conviction for Attempted Possession of Methamphetamine with Intent to Distribute. The Defendant argues that his sentence should be vacated and the matter set for re-sentencing because of errors by the court and because he received ineffective assistance of counsel at sentencing. Having reviewed the Motion, the United States' Opposition, the Defendant's Reply and the record herein, the court hereby issues this Report and Recommendation for the Chief Judge's consideration.

## I. Procedural Background

On October 30, 2014, a Complaint was filed charging the Defendant with Attempted Possession of Methamphetamine with Intent to Distribute. *See* Compl., ECF No. 1. Following his

---

[1] Unless otherwise specified, references to documents shall be to the electronic case filings in Criminal Case No. 14-00064.

arrest, the Defendant appeared in court that same day, was appointed counsel and was thereafter remanded to the custody of the United States Marshals Service. *See* Minutes, ECF No. 2, and Appointment Order, ECF No. 3.

On November 12, 2014, a federal grand jury returned a single count indictment charging the Defendant with Attempted Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). *See* Indictment, ECF No. 5. On November 13, 2014, the Defendant was arraigned, entered a not guilty plea, and trial was then set to commence on January 20, 2015. *See* Minutes, ECF No. 7, and Trial Scheduling Order, ECF No. 8.

On December 18, 2014, the Defendant appeared before the below-signed Magistrate Judge to enter a guilty plea to the Indictment pursuant to a Rule 11(c)(1)(B) Plea Agreement. *See* Minutes, ECF No. 12 and Plea Agreement, ECF No. 10. Because the Defendant's Plea Agreement included a provision that he cooperate with the government, the matter was set for a status hearing three months thereafter, and the Defendant was released from custody. *Id.* at ¶8 and Order Setting Conditions of Release, ECF No. 15.

On January 6, 2015, the Chief Judge adopted the Report and Recommendation Concerning Plea of Guilty in a Felony Case. *See* ECF No. 17.

The Defendant's status hearing was continued several times at the request of the government in order to evaluate his cooperative efforts and because the Defendant was anticipated to be a witness at the trials of Jocelyn Salas and Tanya Palomo. *See* ECF Nos. 20-29.

On March 28, 2016, the United States filed a motion requesting that the Defendant be immediately detained and that the case be set for sentencing. *See* ECF No. 30. According to the motion, the Defendant was subpoenaed by the government to testify at the trial of Tanya Palomo, and despite the Defendant's cooperation agreement, he "refused to provide testimony regarding his supplier's involvement in the conspiracy to distribute methamphetamine hydrochloride" *Id.* at 3. In light of his failure to cooperate with the government, the United States asked that a warrant be issued for the Defendant's immediate detention. *Id.* at 3-4.

On April 19, 2016, the parties appeared before the below-signed Magistrate Judge for the

next scheduled status hearing. *See* Minutes, ECF No. 31. The United States renewed its request that the Defendant be detained. *Id.* The court granted the United States' motion, ordered the Defendant detained, and set the matter for sentencing on July 25, 2016. *Id.* and Sentencing Scheduling Order, ECF No. 32.

On June 10, 2016, the U.S. Probation Office filed the draft Presentence Investigation Report ("PSR"). *See* ECF No. 33. On June 17, 2016, the United States adopted the findings of the draft PSR. *See* ECF No. 34. On June 24, 2016, defense counsel also filed a response indicating that the Defendant accepted and adopting the findings in the draft PSR. *See* ECF No. 35.

On June 27, 2016, the Defendant filed a Motion for Release Pending Sentencing. *See* ECF No. 36. The motion was set for hearing on July 5, 2016, and after hearing from the parties, the below-signed Magistrate Judge denied the Defendant's motion for release. *See* Minutes, ECF No. 39.

On July 7, 2016, the United States filed a Sentencing Memorandum. *See* ECF No. 40.

On July 8, 2016, the final PSR ("Final PSR") was filed by the U.S. Probation Office. *See* ECF No. 41.

On July 14, 2016, defense counsel filed a Sentencing Memorandum and Motion for Downward Departure/Variance. *See* ECF No. 42.

On July 25, 2016, the Defendant was sentenced by the Chief Judge to a term of 108 months imprisonment, with credit for time served, followed by a three-year term of supervised release. *See* Judgment, ECF No. 44.

On August 4, 2016, the Defendant appealed his conviction and sentence to the Ninth Circuit Court of Appeals. *See* Notice of Appeal, ECF No. 48. Based on the Ninth Circuit's Memorandum decision, it appears the Defendant argued on appeal that the sentence imposed was "substantively unreasonable" because the court (1) "double counted by applying a Guidelines enhancement for leadership and also justifying a high-end sentence for that same reason," (2) "used his negative drug tests . . . as an aggravating factor," and (3) "used his failure to cooperate with the government as an aggravating factor." *See* ECF No. 60 at 2. On November 20, 2017, the Ninth Circuit Court of

Appeals affirmed the sentence imposed. *Id.*

On April 3, 2018, the Defendant filed the instant Section 2255 Motion. *See* ECF No. 62. The Government filed a response to the motion (the "Opposition") on August 21, 2018, *see* ECF No. 67, and the Defendant filed a reply brief thereto (the "Reply") on October 15, 2018. *See* ECF No. 70.

## II.    Factual Background

<u>Plea Agreement</u>

As noted above, the Defendant pled guilty pursuant to a Plea Agreement with the government. According to the facts set forth in the Plea Agreement, on October 26, 2014, the United States Postal Service received an envelope addressed to "a Joseph Arriola, P.O. Box 22314, GMF, Barrigada, Guam 96921."[2] Plea Agrmnt at ¶6(b), ECF No. 10. Postal Inspector Deborah Epps determined the envelope to be suspicious, possibly containing narcotics. *Id.* at ¶6(c). The envelope was subjected to a dog sniff, and a K-9 dog alerted to the envelope. *Id.* A search warrant for the envelope was obtained, and in the envelope law enforcement discovered approximately 54 gross grams of a substance that tested presumptive positive for methamphetamine. *Id.* Law enforcement replaced the substance with a sham product and placed the Arriola Envelope back in the mail system for delivery. *Id.*

On October 29, 2014, the Defendant, and two others – a man and a woman[3] – drove to the Barrigada Post Office, where the woman retrieved a slip from P.O. Box 22314, stood in line and received the Arriola Envelope, which she then handed to the Defendant. *Id.* at ¶6(d).

The three individuals were then questioned. *Id.* The Defendant admitted that he attempted to pick up the Arriola Envelope on October 29, 2014, and that he knew the envelope contained methamphetamine hydrochloride. *Id.* at ¶ 6(e). The Defendant stated that he ordered

---

[2] This envelope shall hereinafter be referred to as the "Arriola Envelope."

[3] The man and woman were later identified as Jesse J. Toves ("Toves") and Jocelyn Salas ("J. Salas" or "Jocelyn Salas"). *See* Final PSR at ¶¶14-15, ECF No. 41. *See also* Compl. at ¶2, ECF No. 1.

approximately 50 grams of methamphetamine hydrochloride from a supplier in Las Vegas, Nevada and that he sent the money to said supplier through Western Union currency transactions. The Defendant further admitted that he intended to sell the methamphetamine on Guam for $500 per gram and expected to receive $25,000 in sales. *Id.*

The methamphetamine hydrochloride was then sent to the Drug Enforcement Administration laboratory for analysis. *Id.* at ¶6(f). The parties agreed that, after lab analysis, the net weight – as opposed to the gross weight – of the controlled substance concealed in the Arriola Envelope would be the amount considered for sentencing purposes. *Id.*

Presentence Report

The facts contained in the Final PSR essentially track the stipulated facts in the Plea Agreement. Nevertheless, the court will set forth some additional facts contained in the Final PSR.

On February 20, 2015, the Defendant, accompanied by his lawyer, participated in a follow-up interview with law enforcement. Final PSR at ¶30, ECF No. 41. The Defendant stated that when his attempts to receive drugs from an individual in Fairfield, California failed, he reached out to his cousin, Tanya Palomo ("Palomo"), and asked whether she knew where he could obtain methamphetamine. *Id.* at ¶31.

> [The Defendant] stated that he usually received one to two ounces of methamphetamine from Palomo. He cut and packaged the drugs for distribution and then shared with Toves.
>
> [The Defendant] stated that Toves assisted him with the sale of methamphetamine. When [the Defendant] received the shipments of methamphetamine, he gave Toves approximately five to 10 grams to sell. Toves was supposed to sell the drugs and give the proceeds to [the Defendant]. However, Toves was also using the drugs and was not reliable. Toves either smoked the five grams himself or gave it away, rarely selling his share. Toves began working with [the Defendant] when he moved into [the Defendant]'s home in August 2014, and lived with him for two to three months. They have known each other since they were children.
>
> [The Defendant] stated that J. Salas was also involved in and aware of the methamphetamine sales. [The Defendant] gave J. Salas money on two occasions to wire to Palomo. It was important to note that [the Defendant] denied J. Salas knew who Palomo was, and initially stated that J. Salas did not know why she was wiring the money. When confronted with the text messages between him and J. Salas, [the Defendant] admitted that J. Salas knew he was selling drugs and assisted him in the process by wiring money for him. [The Defendant] did not pay J. Salas, but provided her with methamphetamine for her personal use.

> When asked about the costs and pricing for the methamphetamine, [the Defendant] stated that he paid $750 for an ounce. He broke it down into one gram baggies, which sold for $450 to $500 each. He was usually able to get 20 to 25 grams per shipment. He should have made approximately $11,000 per ounce, but did not always make that much because Toves did not always sell his share. He also did not always get the full amounts from Palomo that were ordered and paid for. He usually sent back $1,000 to $1,500 to Palomo for her cut of the profits. He believes he received between six and seven packages, containing eight to 12 ounces total.

*Id.* at ¶¶33-35, 37.

The offense level computation in the Final PSR was as follows:

| | |
|---|---|
| Base Offense Level based on a drug quantity of 52.6 grams of methamphetamine hydrochloride ("ice") with a purity level of 98.8%, pursuant to § 2D1.1(a)(5)(c)(5): | 30 |
| Adjust for Role in the Offense, pursuant to § 3B1.1(c): | 2 |
| Adjustment for Acceptance of Responsibility: | - 2[4] |
| **TOTAL OFFENSE LEVEL** | **30** |

*Id.* at ¶¶47-55.

Sentencing Hearing

On July 25, 2016, the Defendant appeared before the court for sentencing. The Chief Judge addressed defense counsel's requests as set forth in the Defendant's Sentencing Memorandum. With regard to the Defendant's request for an additional one-level reduction for Acceptance of Responsibility under Section 3E1.1(b), the United States concurred with the Defendant and moved for the additional one-level reduction. *See* Sentencing Tr. 6-7, ECF No. 56.

Defense counsel also moved for a one level downward variance under based on the Defendant's cooperation against Jocelyn Salas, who was charged in a separate case with conspiracy to distribute methamphetamine. *See* Sentencing Mem. at 3-4, ECF No. 42 and Sentencing Tr. 7, ECF No. 56. Defense counsel noted that the government had not moved for a downward departure under Section 5K1.1 of the Guidelines, and thus the Defendant's motion was brought under 18 U.S.C. § 3553(a) as a mitigating circumstance not addressed by the guidelines. *Id.* Defense counsel

---

[4] This adjustment was later changed, as will be further discussed *infra*.

asserted that the Defendant testified before the grand jury when the indictment against Jocelyn Salas was sought and was listed as a trial witness for the government. *Id.* at 8. Defense counsel contended that the Defendant's "cooperation certainly had a substantial part in [Jocelyn Salas] eventually accepting her responsibility and pleading guilty." *Id.*

The government opposed the request for variance, asserting that his cooperation was not "significantly compelling" since "Jocelyn Salas had already come to terms and had admitted her responsibility." *Id.* at 9.

The court ultimately denied the request for a variance, finding that the Defendant "did not fully cooperate as he should have, including testifying completely, truthfully, at the Tanya Palomo trial." *Id.* at 26. Based on a total offense level of 29[5] and a criminal history category of I, the court imposed a sentence of 108 months imprisonment. *See* Judgment, ECF No. 44.

### III.   Legal Standard

Defendant brings the instant motion to collaterally attack his convictions pursuant to 28 U.S.C. § 2255. Section 2255 permits a federal prisoner seeking relief from a custodial sentence to "move the court which imposed the sentence to vacate, set aside or correct the sentence" upon "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To obtain relief under Section 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). Furthermore, Section 2255 is not to be used as a substitute for direct appeal. *See United States v. Frady,* 456 U.S. 152, 165 (1982) and *Raiford v. United States*, 483 F.2d 445, 446 (9th Cir.1973).

///

---

[5] *See* Amended Final PSR at ¶55, ECF No. 47.

**IV.     Analysis**

The Defendant's Motion to vacate his sentence raises the following arguments: (1) the district court erred when it failed to resolve factual disputes regarding the Defendant's role in the offense prior to imposing sentence; (2) he received ineffective assistance of counsel when defense counsel failed to object to the aggravating role adjustment; (3) the sentence was substantively unreasonable because the district court based the high-end sentence on factors fully accounted for in the calculation of the offense level; and (4) the Defendant received ineffective assistance of counsel based on counsel's failure to qualify him for the safety valve adjustment. The court will address each of these arguments in turn.

<u>District Court Failed to Resolve Factual Disputes</u>

The Defendant asserts that the court failed to comply with the Rule 32 of the Federal Rules of Criminal Procedure because it did not resolve the factual disputes regarding his role in the offense.

In relevant part, Rule 32 states:

> At sentencing, the court:
> (A) may accept any undisputed portion of the presentence report as a finding of fact; [and]
> (B) must – for any undisputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]

Fed. R. Crim. P. 32(i)(3)(A) & (B).

At sentencing, defense counsel raised only two issues. The first issue regarding acceptance of responsibility was resolved by the court in the Defendant's favor, resulting in a downward adjustment of three levels. *See* Sentencing Tr. 6-7, ECF No. 56. The second issue concerned whether the Defendant was entitled to a one level downward variance for cooperation he provided against Jocelyn Salas. The court denied the request for variance and ruled that the Defendant's partial cooperation was "not sufficiently compelling" in light of his failure to fully cooperate with the government, as he had agreed. *Id.* at 26.

No party – neither the Defendant nor the Government – disputed the application of a +2 aggravating role adjustment. Because there was no dispute, the court was within its authority to

accept it as a finding of fact. *See* Fed. R. Crim. P. 32(i)(3)(A). Accordingly, the Defendant's claim that the court erred in failing to resolve this dispute should be denied, since there was no dispute for the court to resolve.

### Defense Counsel's Failure to Object to Aggravating Role Adjustment

The Defendant's second argument is that defense counsel was ineffective because she failed to object to the aggravating role adjustment applied in his offense level calculations.

The law regarding ineffective assistance of counsel is well settled. A two-prong test has been articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which held that to establish a claim of ineffective assistance of counsel, a petitioner must show both deficient performance by counsel (the "incompetence prong"), and that such deficient performance prejudiced his defense (the "prejudice prong"). *Id*. at 687.

To demonstrate deficient performance by his counsel, or the incompetence prong, the Defendant must show his counsel's performance was "outside the wide range of professional competent assistance." *Id.* at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. He must show that his counsel's performance failed to meet an objective standard of reasonableness. *Id.* at 689.

Under the prejudice prong, the Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. That is, he must demonstrate "that counsel's errors were so serious as to deprive [him] of a fair trial." *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *See id.* at 700. However, the court's analysis of an ineffective assistance of counsel claim does not require the mechanical application of the standards articulated in *Strickland*. *Id.* at 696. The *Strickland* Court explained:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697. Furthermore, in evaluating a claim of ineffective assistance of counsel, the court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. As stated by the Ninth Circuit, "we 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Jones v. Ryan*, 583 F.3d 626, 636-37 (9th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The Defendant asserts that counsel's performance was deficient because she failed to object to the aggravating role enhancement applied under Section 3B1.1(c) of the Sentencing Guidelines. Section 3B1.1 provides:

> Based on the Defendant's role in the offense, increase the offense level as follows:
> (a) If the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
> (b) If the Defendant was a manger or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S. SENTENCING GUIDELINES MANUAL §3B1.1 (U.S. SENTENCING COMM'N 2015) (emphasis in original).

The commentary to Section 3B1.1 instructs that "a 'participant' is a person who is criminally

responsible for the commission of the offense, but need not have been convicted." *Id.* cmt. n.1.

As noted by the government, defense counsel did not object to this adjustment "because the facts clearly supported that [the Defendant] qualified for an aggravating role[.]" Gov't Resp. at 8, ECF No. 67. Based on the facts set forth in the Defendant's Plea Agreement and the Final PSR, the Defendant acted as an organizer, leader, manager or supervisor in this criminal activity. He reached out to his cousin Palomo in Las Vegas to order the drugs. He instructed Jocelyn Salas to retrieve the envelope containing the drugs. The Defendant admitted that he gave Jocelyn Salas money on two occasions to wire to Palomo. Finally, the Defendant also acknowledged that Toves assisted him with the sale of methamphetamine, though Toves proved to be unreliable. These facts clearly indicate that the aggravating role enhancement was warranted, which explains why defense counsel did not object to its application. Even appellate counsel stated that "[b]ased on the record before the district court, [he] did not find any grounds to challenge the aggravating role enhancement." *See* Mot. to Vacate, Ex. B1 (letter to Defendant from Michael Tanaka, dated July 3, 2017), ECF No. 62. Appellate counsel further stated:

> The presentence report said you directed the actions of both Jocelyn Salas and Jesse Toves. That is legally sufficient for the enhancement. For that reason, any challenge would have to be by a 2255 petition that contains the facts showing you did not have any control or leadership role over Jocelyn [Salas] and Toves.

*Id.*

Despite appellate counsel's advice, the Defendant's Motion fails to provide any facts to contradict the finding that the Defendant was an organizer, leader, manager or supervisor of the drug distribution ring. This court does not find that counsel's performance was deficient in failing to object to the aggravating role enhancement. Accordingly, the Defendant's claim of ineffective assistance of counsel as to the aggravating role adjustment should be denied.

<u>Sentence Based on Factors Fully Accounted for in Offense Level Calculation</u>

The Defendant's third argument is that "the district court's imposition of the high-end nine-year sentence was substantively unreasonable because the high-end sentence was based on factors

///

///

fully accounted for in the calculation of the offense level." Mot. to Vacate at 9,[6] ECF No. 62. The Defendant's Motion in support of his assertion is essentially a repeat of the arguments raised in his Opening Brief before the appellate court. Compare Mot. to Vacate at 9-11, ECF No. 62 to Appellant's Opening Br. at 11-14, in *United States v. Franklin Salas*, Appellate Case No. 16-10345 (9th Cir). The Ninth Circuit has already heard this argument and rejected it.

A petitioner does not have an unlimited ability to raise a Section 2255 challenge. Claims already raised on direct appeal cannot serve as the basis for a Section 2255 motion. *See Winthrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J. concurring) ("Thus a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim. If the claim was raised and rejected on direct review, the habeas court will not adjudicate it absent countervailing equitable considerations.") and *Hammond v. United States*, 408 F.2d 481, 483 (9th Cir.1969) ("Section 2255 may not be invoked to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction."). Because the Defendant's third argument was already decided on direct appeal, the court recommends that the Chief Judge deny his claim for relief.

<u>Defense Counsel's Failure to Qualify Him for Safety Valve Adjustment</u>

The Defendant also argues that he received ineffective assistance of counsel because his attorney failed to qualify him for the safety valve adjustment.

The safety valve is a provision in the Sentencing Guidelines that authorizes a judge to impose a sentence below the mandatory minimum sentence if a drug defendant meets certain criteria. This provision of the Sentencing Guidelines provide in relevant part:

> (a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841 . . . [or] 846 . . ., the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
> (1) . . .
> (2) . . .
> (3) . . .

---

[6] The reference here is to the page numbered 9 in the Defendant's Motion, which corresponds to page 43 on the ECF footer.

> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) . . .

U.S. SENTENCING GUIDELINES MANUAL §5C1.1 (U.S. SENTENCING COMM'N 2015).

Thus, in order to qualify for the safety valve provision, one of the criteria the Defendant must meet is that he must not have been an organizer, leader, manager, or supervisor of others engaged in the criminal offense. As discussed above, the court has already determined that the aggravating role adjustment was properly applied to the Defendant. Thus, the Defendant was ineligible for the safety valve provision, and his counsel was not deficient in failing to ask that it be applied. The court therefore recommends that the court deny the Defendant's claim of ineffective assistance of counsel on this ground.

**V. Conclusion**

Based on the above discussion, the below-signed Magistrate Judge recommends that the Chief Judge deny the Motion in its entirety.

IT IS SO RECOMMENDED.



/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Feb 01, 2019

**NOTICE**
**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**